LYONS, Justice.
S.T.S. (“the father”) appealed to the Court of Civil Appeals from a judgment in which the trial court awarded custody of N.S., his minor child, to C.T., the child’s maternal grandmother (“the grandmother”). The Court of Civil Appeals, on May 12, 2000, affirmed the judgment, without an opinion. S.T.S. v. C.T. (No. 2990389), 795 So.2d 853 (Ala.Civ.App.2000) (table). We granted the father’s petition for certio-rari review. We reverse and remand.
This is the second time the Court of Civil Appeals has considered this case. The father first appealed from an earlier judgment awarding custody of N.S. to the grandmother. See S.T.S. v. C.T., 746 So.2d 1017 (Ala.Civ.App.1999). According to that opinion, the father and P.T. (“the mother”) lived together for several years, but never married. Two children were born during that time — S.S. in 1981 and N.S. in 1987. The mother and the father separated in 1988. By mutual consent, the father took S.S. to live with him and the mother took N.S. to live with her. While the mother had custody of N.S., the child lived in various places, including the home of the grandmother who now has custody of him, the home of his paternal grandmother, and the home of an aunt and uncle. N.S. also lived with his father while he attended his first or second year of school.
In October 1996, while N.S. and his brother S.S. both were living with the mother, they were charged with truancy because they were not attending school. N.S.’s probation officer testified that the father became involved in the child’s juvenile case and ensured that N.S. complied with the requirements of a consent judgment entered in that case. N.S. went to live with the father in May 1997. S.S. returned to the father’s home also.
In May 1997, the mother filed a paternity action to establish S.T.S.’s paternity of S.S. and N.S. and to obtain child support from him. (It is apparent that at some point before October 1998, the trial court determined that S.T.S. is N.S.’s father. S.T.S. does not contest paternity.) The father moved for a custody determination, because both children were then living with him. The grandmother intervened to seek custody of N.S., alleging that she had *338 been the child’s primary caretaker. The trial court allowed the grandmother to intervene, and in July 1997 it awarded temporary custody of N.S. to the grandmother. In August 1997, N.S. left the father’s home and went to live with the grandmother, pursuant to the temporary custody order.
In October 1998, the trial court entered a judgment (“the 1998 judgment”) in which it found that N.S. was a “dependent child,” as that term is defined for purposes of juvenile proceedings in this State (see § 12-15-1(10), Ala.Code 1975); that neither of the parents was “suited to maintain custody of the minor child” and that both parents had relinquished custody of the child; that awarding custody to the grandmother “would promote the best interest and welfare” of the child and that removing custody from the grandmother “would be disruptive and detrimental to the child’s welfare”; and that both parents had the ability to pay child support. The trial court awarded permanent custody of N.S. to the grandmother, established a visitation schedule, and calculated child support due from both parents.
The father appealed from the 1998 judgment to the Court of Civil Appeals. The Court of Civil Appeals reversed that judgment and remanded for further proceedings. The court stated:
“The issue here is whether the court correctly applied a dependency statute to determine the appropriate custody placement of N.S. After thoroughly reviewing the juvenile dependency statutes and applicable caselaw, we conclude that this case was 'primarily a custody dispute and, therefore, did not fall within the scope of the dependency statute. The juvenile statutes require the filing of a petition alleging the facts constituting dependency, and they set out specific requirements regarding a dispositional hearing. See §§ 12-15-50, -52, and - 65, AIa.Code 1975. In reviewing the cases relied on by the grandmother, we note that in each instance either a dependency petition was filed to commence the action, or evidence was presented regarding a parent’s relinquishment of custody or the parent’s fitness to adequately care for his or her child. It is clear that this case was initiated by the mother’s filing a support/paternity complaint and that it became a custody case after S.T.S. sought custody. Although the grandmother alleged that N.S. had been deemed dependent, the action in which he had been deemed dependent related to a 1996 truancy charge in the juvenile court and was not related to this proceeding.
“We find no evidence to support a conclusion that the father relinquished his custodial rights or that he is unfit to properly care for his son N.S. We note that throughout N.S.’s life the father has had contact with him. In addition, the father has reared S.S. since the mother and father separated, with the exception of a six-month period in 1996 when S.S. moved in with his mother. The record indicates no conduct by the father that can be deemed to be detrimental to the welfare of N.S., and it contains no evidence indicating that he is an unfit parent.
“The father’s weekly work schedule requires a four-day stay in New York; however, the father also has extended off-time, during which he remains in Alabama. The paternal grandmother provides an adequate support system in his absence. The father admitted using marijuana in 1991; however, there is no evidence that he has engaged in any illegal drug use in the past several years. The father appears to have expressed an interest in both of the chil *339 dren by participating in family activities and helping when N.S. was involved in the juvenile court truancy proceeding. In addition, we note that the ‘Home Evaluation Report’ submitted by the Department of Human Resources found the father to have a suitable home for N.S. Again, no evidence indicates that the father relinquished his right to the custody of N.S., and N.S.’s custody had not been granted to the grandmother by a prior court order. The July 1997 order was temporary, pending a final custody determination. Therefore, the father never lost his presumption as the natural parent established in Ex parte Terry, [494 So.2d 628 (Ala.1986)]; see also W.B.Z. v. D.J. 645 So.2d 300 (Ala. Civ.App.1993); Ex parte D.J., [645 So.2d 303 (Ala.1994)]. When a case is more a custody case than a determination-of-dependency case, and the court relied on the dependency statute to find a child to be dependent and to award custody to a nonparent, that ruling will not stand. C.P. v. M.K., 667 So.2d 1357 (Ala.Civ. App.1994) (reversing trial court order where the evidence did not support a finding that a child was dependent and where the court had not considered the Terry standard in transferring custody from mother to a nonparent). Based on the foregoing, we conclude that the trial court erred in its findings. The judgment is reversed and the ease is remanded for further proceedings consistent with this opinion. We note that on remand, the trial court, upon applying the correct standard, may very well reach the same conclusion. We are not dictating to the trial court the outcome that should be reached on remand.”
746 So.2d at 1020-21 (emphasis added). Neither party sought further review of the Court of Civil Appeals’ opinion on the first appeal.
On remand, without considering any additional evidence or holding any other proceedings, and notwithstanding the conclusions drawn by the Court of Civil Appeals as to the record before it, the trial court entered a revised judgment, in January 2000 (“the 2000 judgment”), again awarding custody of N.S. to the grandmother. The 2000 judgment states:
“1. That the parties ... were never married, however, they had two children, and separated shortly after the birth of the second child, the minor child in question, [N.S.]
“2. That the father ... never filed a Petition in Probate Court to legitimate the minor children, nor prior to these proceedings was the paternity of these children ever established; however, the father did take an active interest in the rearing of the older of the two children.
“3. That the younger of the two children, [N.S.], the boy made the subject of this order, was raised over the years primarily by his mother’s side of the family, either by her mother, [C.T.,] or her sister and her sister’s husband.
“4. That the natural father ... had little, if anything, to do with the raising of this youngest child.
“5. That both children came to the attention of the Court pursuant to a CHINS [child-in-need-of-supervision] petition being filed by the St. Clair County school system because both children were living with their mother ... and not attending school.
“6. That after looking into the matter the Court allowed the older of the two children to go and live with his father ... in hopes that he would attend school. Whether the oldest child has attended school or not is unknown as he resides in Jefferson County, however, the youngest child ... has attended *340 school since being placed with his grandmother.
“7. That this case came initially on complaint for paternity [adjudication] filed by ... the natural mother seeking support for the minor children.
“8. That following the complaint for paternity being filed there was filed a counter-petition by the father and intervention by the grandmother....
“9. That the parties in this case were all represented by counsel. A Guardian ad Litem was appointed to represent the interest of the minor child.... The Department of Human Resources from both St. Clair County and Jefferson County were asked to submit home studies to the Court for its review and those were reviewed.
“10. That the natural mother, being the individual that had custody of the minor children during the time the truancy petitions were filed, is deemed to be unfit.
“11. That the natural father, by his own admission works out of state for long periods of time and the oldest child is left with his mother.
“In many ways the issue that came before the Court was which grandmother was in fact going to raise the youngest child.... The one who had done so the bulk of his life, [C.T.], or the mother of the natural father, who had not raised the youngest child. The natural father had never paid support for the minor child on a regular basis, nor had he ever been on a regular basis actively involved in the life of the minor child.... Were it not for the grandmother, [C.T.], and the maternal aunt, the minor child ... at his tender age, would have been left to fend for himself almost exclusively. It is the judgment of this Court that the natural father has in fact relinquished his custodial rights to this young child in that he has never legitimated the minor child, never took an active part in the minor child’s life and never provided any regular support for the minor child. That the natural father is for those reasons unfit to care for this child. He without question did a much better job on his older child[;] why he did not do so for [N.S.] is unknown, but he did not.
“The Court review[ed] all the testimony taken over the three days of this trial. The Court reviewed the written report of the Guardian ad Litem. The Court reviewed all the exhibits entered by the parties and reports filed by the respective Departments of Human Resources. It is the belief of this Court, based on the evidence and testimony taken that [N.S.J is dependent and that to wrench [N.S.] from the stability of his maternal grandmother, [C.T.], would be so contrary to his best interest as to be unconscionable.”
(Emphasis added.)
The father again appealed to the Court of Civil Appeals, but as to the 2000 judgment the Court of Civil Appeals affirmed, without an opinion. The father petitioned this Court for certiorari review, arguing that in the 2000 judgment the trial court again failed to apply the correct standard in determining custody of N.S., and, therefore, that the Court of Civil Appeals’ affir-mance of the 2000 judgment conflicts with Ex parte D.J., 645 So.2d 303 (Ala.1994); Ex parte Terry, 494 So.2d 628 (Ala.1986); and Ex parte Mathews, 428 So.2d 58 (Ala. 1983), all of which deal with the presumptive right of a parent to the custody of his or her child, as opposed to a nonparent’s right to custody. We granted certiorari review solely to consider whether the trial court erred in awarding custody of N.S. to *341 the grandmother.[1]
This Court, in Ex parte Terry, supra, established the standard a trial court must apply in a custody dispute between a parent and a nonparent:
“ ‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of ... misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.’ ”
494 So.2d at 632 (quoting Ex parte Mathews, 428 So.2d at 59.) A child’s being born to unmarried parents does not affect the Terry presumption in favor of the biological parent.
“[I]n a custody contest between a non-parent and one who has been adjudicated to be the natural father of a child born out of wedlock, the father is entitled to the presumption that the child’s best interests will best be served by an award of custody to him, subject to the absence of a finding that he is unfit and subject to [certain] exceptions....”
Ex parte D.J., 645 So.2d at 306. The Terry presumption in favor of the parent in a custody dispute with a nonparent does not apply if the parent has voluntarily relinquished custody or if the court has entered a prior judgment removing custody from the parent, but neither of those exceptions is applicable here. Id.
The issues decided by an appellate court become the law of the case on remand to the trial court, and the trial court is not free to reconsider those issues. Murphree v. Murphree, 600 So.2d 301 (Ala.Civ.App.1992). According to the doctrine of the law of the case, “whatever is once established between the same parties in the same case continues to. be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). In its 1999 opinion, the Court of Civil Appeals concluded that this case does not involve a dependency adjudication, that no evidence in the record supports a conclusion that the father relinquished the custody of N.S. or that the father is an unfit parent, and that the father never lost his prima facie right to custody of N.S. according to Terry. Because the trial court entered the 2000 judgment on the same record as that before the Court of Civil Appeals, the facts on which the Court of Civil Appeals’ decision was predicated continue to be the facts of the case, and, therefore, the Court of Civil Appeals’ conclusions in its 1999 *342 opinion are the law of the case. The trial court’s duty on remand was “to comply with the appellate mandate according to the true intent and meaning of the mandate as determined by the reviewing court’s directions.” Ex parte McWhorter, 716 So.2d 720, 722 (Ala.Civ.App.1998). Accordingly, the trial court erred in concluding that the child was “dependent,” that the father had “relinquished his custodial rights” to the child, and that the father was “unfit to care for” the child.
Absent a finding that the father voluntarily forfeited custody of the child or that the father was unfit to have the custody of the child, both of which findings are contrary to the law of the case, the grandmother cannot overcome the Terry presumption in favor of the father and the trial court’s 2000 judgment awarding custody of N.S. to the grandmother cannot stand. Therefore, the Court of Civil Appeals erred in affirming the 2000 judgment. Our decision as to the 2000 judgment does not preclude the grandmother from filing a petition to modify custody if she has new evidence concerning the father’s fitness as a parent, but we emphasize that in any subsequent proceedings the trial court must apply the Terry standard. In addition, the grandmother must bear the burden of proving not only that a custody modification would materially promote the child’s best interests and welfare, but also that the benefits of modifying custody would more than offset the disruptive effect of uprooting the child. See Ex parte McLendon, 455 So.2d 863 (Ala.1984).
We reverse the judgment of the Court of Civil Appeals and remand the cause for that court to instruct the trial court to award custody of N.S. to the father.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and SEE, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
HOUSTON, J., concurs in the result.
STUART, J., dissents.

. During the course of these proceedings, the father filed with this Court a motion to stay a child-support order entered by the trial court, as well as a petition for a writ of mandamus requesting that we direct the trial court to revoke orders finding the father in contempt for nonpayment of child support. The father contended in both the motion to stay and the petition for the writ of mandamus that the trial court’s child-support order was incorrect. The father’s certiorari petition deals solely with the issue of N.S.'s custody; therefore, we denied both the motion and the mandamus petition. See Ex parte S.T.S. (No. 1000274, December 8, 2000),-So.2d-(Ala.2000) (table) (denying petition for writ of mandamus).