956 So.2d 1142 (2005)
STATE DEPARTMENT OF REVENUE
v.
HOOVER, INC.
2030402.
Court of Civil Appeals of Alabama.
March 18, 2005.
*1143 Troy King, atty. gen.; Henry Chappell, deputy atty. gen., and chief counsel, Department of Revenue; and Margaret Johnson McNeill and J. Wade Hope, asst. attys. gen., and asst. counsel, Department of Revenue, for appellant.
Blake A. Madison and David E. Rains of Tanner & Guin, LLC, Tuscaloosa; and Bruce P. Ely of Bradley Arant Rose & White, LLP, Birmingham, for appellee.
Lorelei A. Lein, staff atty., Alabama League of Municipalities; and Mary Pons, staff atty., Association of County Commissions of Alabama, for amici curiae Alabama League of Municipalities and the Association of County Commissions of Alabama, in support of the appellant.
MURDOCK, Judge.[1]
The State Department of Revenue ("the Department") appeals from a judgment entered in favor of Hoover, Inc., ordering the Department to refund Hoover's payment of sales taxes.
Hoover is a Tennessee corporation engaged in the quarrying and retail sale of crushed stone and other products in Alabama and Tennessee. Hoover operates three locations in Alabama; one of its quarries is located in Colbert County. The Colbert County quarry has been in operation for 25 years and, depending on the season, employs 30 to 40 employees with an annual payroll of $1,500,000.
During the years 1996 to 1999, Hoover sold crushed stone from the Colbert County quarry to local governmental entities of Mississippi. Hoover did not collect Alabama sales taxes from those sales. On October 11, 2000, the Department entered a final state sales tax assessment against Hoover for the period of July 1996 through June 1999. On October 27, 2000, Hoover paid the final assessment, under protest, in the total amount of $160,306.95.
*1144 Hoover appealed the final assessment to the Colbert Circuit Court, arguing that the practice of exempting sales to Alabama instrumentalities and municipalities from the sales tax, while imposing the sales tax on sales to Mississippi governmental entities, violated the Commerce Clause of the United States Constitution. Hoover relied on § 40-23-4(a)(17), Ala.Code 1975, which exempts from the sales tax the "gross proceeds of sales of tangible personal property . . . which the state is prohibited from taxing under the Constitution or laws of the United States. . . ."
The Department moved for a summary judgment, arguing that although the gross proceeds of sales of tangible personal property to the State of Alabama and to Alabama counties and municipalities are exempted from the sales tax,[2] it was not unconstitutional to charge Mississippi governmental entities the sales tax when the out-of-state governmental entities took delivery of the goods in Alabama. Neither party submitted evidentiary materials in support of or in opposition to the Department's summary-judgment motion. On September 11, 2001, the court granted the Department's motion for a summary judgment, and Hoover timely appealed to our Supreme Court.
On appeal, Hoover argued that the taxation scheme was facially discriminatory against interstate commerce and "fault[ed] the Department for failing to offer any proof indicating that its taxation of out-of-state governmental entities is in any way compensatory for taxes local Alabama governments do not pay." Hoover, Inc. v. State Dep't of Revenue, 833 So.2d 32, 34 (Ala.2002) ("Hoover I"). The Supreme Court agreed, stating:
"Because at trial the Department has the burden of proof to justify a law that on its face discriminates against interstate commerce, the trial court erred in entering a summary judgment in favor of the Department on a record where the Department offered no evidentiary justification for the discriminatory impact."
Hoover I, 833 So.2d at 36. The Supreme Court reversed the trial court's judgment and remanded the case for further proceedings.
On August 28, 2003, the trial court held an evidentiary hearing. On September 10, 2003, the trial court found:
"At the evidentiary hearing, testimony was offered from George Bright, with Hoover, Inc., and from Dan Lawrence, who performed the audit in question. Evidence suggested that sales were made by Hoover, Inc., to municipalities in the State of Mississippi, some of which were delivered to the municipality and some of which were picked up by the municipality. The Department imposed sales tax on those transactions where the gravel was picked up by the municipality.
"Although rationalizations for the disparaging treatment conceivably exist, the Department offered no evidence, which would justify the facially discriminatory scheme of taxation."
The trial court found that the taxation scheme was unconstitutional as applied to Hoover's transactions with the out-of-state governmental entities, and it ordered the Department to refund the sales tax and interest Hoover had paid under protest. The Department appeals.
*1145 Though phrased as a grant of regulatory power to Congress, the Commerce Clause is understood to have a "`negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Oregon Waste Sys., Inc. v. Department of Envt'l Quality of Oregon, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). The United States Supreme Court has explained that the first step in analyzing any law subject to judicial scrutiny under the negative aspect of the Commerce Clause is to determine which of two categories it falls within, namely, whether it "`regulates evenhandedly with only "incidental" effects on interstate commerce,'" or whether it "`discriminates against interstate commerce.'" Oregon Waste Sys., Inc., 511 U.S. at 99, 114 S.Ct. 1345 (quoting Hughes v. Oklahoma, 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). The former category involves situations "where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade." City of Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). In those cases the United States Supreme Court has adopted "a much more flexible approach, the general contours of which were outlined in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 [(1970)]."[3]Id. As to the latter category, the term "discrimination" means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Sys., 511 U.S. at 99, 114 S.Ct. 1345 (citing Hughes v. Oklahoma, 441 U.S. at 344 n. 6, 99 S.Ct. 1727). "[W]here simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." City of Philadelphia, 437 U.S. at 624, 98 S.Ct. 2531.
Our consideration of this case, however, is governed by the Alabama Supreme Court's decision in Hoover I. That decision not only forecloses any argument as to whether the tax scheme at issue involves a discrimination against economic interests that implicates the Commerce Clause, it forecloses any argument that the law at issue falls within the former of the two above-described categories.
As in Oregon Waste Systems, because the tax scheme at issue has been determined to fall within the latter of the two above-described categories, "the virtually per se rule of invalidity provides the proper legal standard here, not the Pike balancing test. As a result, the [tax scheme] must be invalidated unless [the Department] can `sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" 511 U.S. at 100-01, 114 S.Ct. 1345 (quoting New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)).
Hoover argues that the Department has not demonstrated what is known as a "compensatory tax scheme." The United States Supreme Court has explained *1146 the concept of a "compensatory tax" as follows:
"Though our cases sometimes discuss the concept of the compensatory tax as if it were a doctrine unto itself, it is merely a specific way of justifying a facially discriminatory tax as achieving a legitimate local purpose that cannot be achieved through nondiscriminatory means. . . . Under that doctrine, a facially discriminatory tax that imposes on interstate commerce the rough equivalent of an identifiable and `substantially similar' tax on intrastate commerce does not offend the negative Commerce Clause."
Oregon Waste Sys., 511 U.S. at 102-03, 114 S.Ct. 1345.
It is true that demonstrating a "compensatory tax defense" would be one way of justifying the difference in treatment of out-of-state governmental entities and in-state governmental entities in this case. Indeed, in Hoover I, the Alabama Supreme Court acknowledged the existence of that defense in an appropriate case and commented on the elements that must be shown in order to support that defense. That does not mean that such a defense would be the only possible justification for a difference in treatment of out-of-state governmental entities and in-state governmental entities. We accept, for purposes of this opinion, Hoover's position that such a defense is not applicable in this case. Nonetheless, we hold that the Department satisfied the Supreme Court's directive in Hoover I, to justify the different treatment of in-state and out-of-state governmental entities.
Alabama imposes a sales tax on sales to out-of-state, nongovernmental entities that take delivery of products within the state of Alabama. Likewise, Alabama imposes a sales tax on sales to out-of-state, governmental entities that take delivery of products within the state of Alabama. Alabama imposes a sales tax on all sales to in-state, nongovernmental entities that take delivery of products within the state of Alabama. Alabama does not, however, impose a sales tax on sales to in-state, governmental entities, i.e., the State of Alabama and its political subdivisions, that take delivery of products within the state of Alabama.[4] As to the in-state, governmental entities upon which the sales tax is not imposed, the Department offers the following justification:
"The sales tax exemption mitigates the administrative costs of an Alabama governmental entity having to pay sales tax to the State, and then having the State refund and disburse a portion, if any, of the tax right back to the Alabama entity to fund various governmental functions. This is an unnecessary step, as it is simpler to just exempt the Alabama entities from having to pay the sales tax in the first place."
We believe this is a logical, and reasonable, justification. We do not read the Commerce Clause, nor any of the cases cited to us by Hoover or discussed by our Supreme Court in Hoover I, as requiring a contrary conclusion in the context presented here.[5]
*1147 The State of Alabama imposes a sales tax on sales of products by Hoover to all in-state and out-of-state entities, equally. The only exception to this rule is a limited exception for sales to the State itself and to its political subdivisions. The State logically and reasonably argues that it should not be required to incur administrative costs merely to collect from itself and from its political subdivisions moneys that, if left untaxed, would remain directly available to fund governmental functions. If Hoover's position prevails, the collected funds will only be available to fund governmental functions after the State has incurred the administrative cost to collect those moneys and then return them to itself and to the other governmental entities from which the moneys came in the first place. We have been cited to no case requiring a state to tax itself and its own governmental entities in this manner in order to satisfy the Commerce Clause.
Based upon the foregoing, the judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment in favor of the Department.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN, J., concurs in the result, without writing.
BRYAN, J., dissents, with writing.
BRYAN, Judge, dissenting.
As a preamble to my dissent, I feel compelled to state that I do not believe that the Commerce Clause was implicated in this case. Hoover sold the product to the Mississippi governmental entities within the state of Alabama, and the Mississippi *1148 governmental entities took delivery of the product from Hoover within the state of Alabama. Consequently, those transactions were entirely intrastate. Therefore, those transactions did not involve interstate commerce. Because those transactions did not involve interstate commerce, I do not believe they implicated the Commerce Clause.
However, it is my belief that the holding of the Alabama Supreme Court in Hoover, Inc. v. State Department of Revenue, 833 So.2d 32, 35 (Ala.2002)("Hoover I"), wherein the Court stated that the Department "had the burden of establishing a defense to a facially discriminatory tax scheme" presupposed that those transactions did implicate the Commerce Clause. Thus, under the law-of-the-case doctrine, this court is foreclosed by that decision of the Supreme Court from holding that the transactions at issue in this case did not implicate the Commerce Clause. See Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001) ("According to the doctrine of the law of the case, `whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'") (quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)).
Because I believe that the Supreme Court's decision in Hoover I precludes this court from holding that the Commerce Clause is not implicated, I respectfully dissent solely on the ground that I do not believe that the Department of Revenue "offered . . . evidentiary justification for the discriminatory impact." 833 So.2d at 36. The only references in the record to the justification of the sales tax are contained in the Department's argument section in its memorandum in support of its motion for a summary judgment; in its motion to alter, amend, or vacate the judgment; and in an argument made orally to the trial court during a hearing.[6]
The Department failed to present any evidence, through affidavit, testimony, or documents, justifying the "discriminatory impact" of the sales tax. Indeed, the language quoted by the majority as the justification for the sales tax is taken from a paragraph in the argument section of the Department's brief to this court. "However, the unsworn statements of counsel are not considered evidence. American Nat'l Bank & Trust Co. v. Long, 281 Ala. 654, 207 So.2d 129 (1968)." Singley v. Bentley, 782 So.2d 799, 803 (Ala.Civ.App.2000). See Bamberg v. Bamberg, 441 So.2d 970 (Ala.Civ.App.1983) (stating that arguments of counsel are not evidence that will justify a preliminary injunction).
Accordingly, the Department's argument cannot be considered "evidentiary justification" for overturning the trial court's amended order, which found that "the Department offered no evidence, which would justify the facially discriminatory scheme of taxation."
For the foregoing reasons, I must dissent.
NOTES
[1] This case was originally assigned to another judge on this court; it was recently reassigned to Judge Murdock.
[2] Section 40-23-4(a)(11), Ala.Code 1975, exempts from the sales tax the gross proceeds of the sales of tangible personal property to the State of Alabama and to Alabama counties and municipalities.
[3] In Pike v. Bruce Church, Inc., the Supreme Court stated:

"Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."
397 U.S. at 142, 90 S.Ct. 844.
[4] In their amicus curiae brief to this court, the Alabama League of Municipalities and the Association of County Commissions assert that the surrounding states of Mississippi, Tennessee, and Georgia tax governmental and nongovernmental, in-state and out-of-state, entities in the same manner as does the State of Alabama.
[5] Referencing the Supreme Court's decision in Hoover I, the dissent argues that the trial court's judgment must be affirmed on the ground that the State failed to present evidence in support of its stated justification for the sales-tax exemption at issue. The issue raised on appeal in Hoover I, however, was whether the above-discussed compensatory-tax defense was viable. Specifically, "Hoover fault[ed] the Department for failing to offer any proof indicating that its taxation of out-of-state governmental entities is in any way compensatory for taxes local Alabama governments do not pay." Hoover I, 833 So.2d at 34. We do not construe the Supreme Court's decision as dictating that a compensatory-tax defense is the only justification that could be shown by the Department on remand or as negating the possibility of the establishment of some defense that might not require testamentary or other evidence of facts beyond those of which judicial notice could be taken. Cf. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 112 (Ala.1998) (noting that legislation should be upheld in the face of an equal-protection challenge so long as "`"it is evident from all the considerations presented to [the legislature], and those of which [the court] may take judicial notice,"'" that the challenge is due to fail (quoting Western & Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 674, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981)) (emphasis added)).

"The principle is universal that legislation must be taken to be valid unless the contrary is made clearly to appear. Reid v. State of Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108 [(1902)]; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 489, 121 A.L.R. 283 [(1902)]. The principle is stated in the latter case, by Justice Gardner, as follows:
"`Or to state it differently, all that the legislature is not forbidden to do by the organic law, state or federal, it has full competency to do. And in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of the government. All of which is embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law.'"
James v. Todd, 267 Ala. 495, 505, 103 So.2d 19, 27 (1957).
In Hoover I, the Supreme Court concluded that the Department has "the burden of establishing a defense to a facially discriminatory tax scheme." 833 So.2d at 35 (emphasis added). We believe for the reasons stated in the text that it has done so.
[6] In a responsive pleading, the Department did present a certified copy of a confidential audit report of Hoover. However, the confidential audit report does not purport to establish any justification for the discriminatory impact of the sales tax. It was apparently presented for the purpose of convincing the trial court that interstate commerce was not involved in the transactions between Hoover and the Mississippi governmental entities.