LYONS, Justice
(concurring in part and dissenting in part).
I concur in the majority’s decision to affirm the judgment of the Court of Civil Appeals, which affirms the' judgment of the trial court, based on evidence that the father voluntarily relinquished custody of the child to the maternal grandparents. This Court will affirm a judgment that is supported by any valid legal ground. Ex parte CTB, Inc., 782 So.2d 188 (Ala.2000). However, I respectfully dissent from the decision to affirm the trial court’s ex mero motu order insofar as it deems the father an unfit parent.
The record is replete with evidence suggesting a healthy and cooperative relationship between the father and the maternal grandparents before the trial. As early as August 2002, the mother and the father shared joint legal custody of the child. After the mother overdosed on drugs, the father and maternal grandparents agreed to seek joint custody of the child, and the trial court entered a pendent lite order to this effect. Before trial, the father sought full custody. After hearing the evidence, not only did the trial court deny the father full custody, without being requested to do so by the maternal grandparents or the child’s guardian ad litem it deemed the father unfit.
*672 The trial court’s order, upon which the main opinion relies, emphasizes the totality of various circumstances that pointed to the father’s unfitness without giving appropriate emphasis to more recent developments. Those circumstances include the father’s past history of drug and alcohol addiction, his poor work history, and his carelessness regarding his finances. It further characterizes the father as immature, irresponsible, and easily dominated by his mother. Specifically, the order states that the father was not present when the child was born; that he did not legitimize the child until the child was approximately 16 months old; that he failed to exercise his regularly scheduled visitation rights during a particular summer month because he lacked vacation days at this job; that before September 2003 he never spent 24 hours alone with the child; that he lived with his mother at the time of trial; and that he was easily dominated by his mother.
I disagree with the main opinion that these characterizations by the trial court, many of which, as previously noted, ignore more recent and positive events, rise to a level of unfitness. The record is replete with evidence demonstrating that the father has made great strides in reforming his life and in establishing a loving relationship with the child. The father sought professional rehabilitation for his addictions in 1997; he has been sober since October 1998, before the child was born; he continues to attend meetings of Narcotics Anonymous and Alcoholics Anonymous; and he has maintained a steady job for the past two years. Additionally, the father established contact with the child shortly after the child’s birth; he subsequently legitimized the child; he intervened in and was part of the legal proceedings between the mother and the maternal grandparents regarding the child; as early as August 2002, he and the child’s mother shared joint legal custody of the child; he cooperated with the maternal grandparents in seeking to modify the custody arrangement he held with the child’s mother after her drug overdose; before trial, he and the maternal grandparents shared joint custody of the child; he has maintained constant contact with the child; he pays for the child’s health insurance and various other expenses, notwithstanding the trial court’s criticism of his management of his finances; and he has attended and completed parenting classes. Indeed, under the trial court’s order, the father was awarded very specific and liberal unsupervised visitation with the child, certainly an anomalous result if he is so unfit.
At most, the evidence suggests that the father is not fully ready to undertake the sole responsibility of parenting. While the father did file a petition seeking full custody, he nevertheless freely and candidly admitted at trial that the child is very happy with the maternal grandparents and that an abrupt change in custody might be traumatic for the child. The father, in essence, suggested to the court that he favored a change more gradual in nature. Certainly the father cannot be faulted for respecting the best interests of the child.
In Ex parte Terry, 494 So.2d 628, 632 (Ala.1986), this Court stated that in order for a nonparent to overcome a natural parent’s right to the custody of his child, there must be a finding of “ ‘misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question’ ” (quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)(em-phasis omitted)).
In Horn v. Horn, 879 So.2d 1197 (Ala.Civ.App.2003), the trial court, upon finding the mother unfit, awarded custody of her five children to the maternal grandparents. *673 The Court of Civil Appeals reversed the trial court’s judgment, stating:
“The evidence produced at the trial indicated that the mother was struggling financially, that she had no driver’s license and no vehicle, that some of her children have special needs, and that the children have some unspecified dental problems that have resulted in their having some teeth removed....
“We do not find clear and convincing-evidence of the mother’s unfitness in this record. At most, we find evidence that the grandparents, because of their intact marriage, their stable and greater income, and their experience as parents, are perhaps more fit than the mother .... This mother is employed, she rents a home, and she has friends upon whom she can rely for assistance. She sought treatment for depression on her own initiative, and she stated at trial that she would seek assistance again, through counseling or other methods, were she to become depressed or overwhelmed by her situation. The trial court commended the mother for the steps she had taken to improve her life. We do so as well. However, in our opinion, the improvements the mother has made serve to indicate her fitness not her unfitness.”
879 So.2d at 1202-03 (emphasis added).
In H.K. v. G.S.F., 877 So.2d 611 (Ala.Civ.App.2003), the Court of Civil Appeals held that the trial court had erred in awarding joint physical and legal custody to the mother and the paternal grandmother absent a specific finding of unfitness on the part of the mother:
“The record supports the trial court’s findings that the mother had lived in and had been evicted from several residences, had a poor work history, had remained in an abusive relationship with her husband for an extended period, and had only a ‘marginal home.’ However, despite those problems, the record further reflects that the mother had otherwise properly cared for the child; had maintained stable housing for approximately one year before the hearing; had separated from her husband in October 2000 and had subsequently filed for a divorce; and had also obtained stable employment, working as a cashier and as a housekeeper. The mother pays for day care for the minor child and for another child of hers. She has also attended parenting classes' since approximately July 2002. The trial court, without having found the mother to be unfit, awarded the grandmother joint physical and legal custody of the child. The record does not reflect that a prior custody judgment divested the mother of custody of the child or that the mother relinquished custody of the child. Therefore, we must conclude that the trial court erred in granting the paternal grandmother joint physical and legal custody.”
877 So.2d at 612-13.
After comparing the facts in the above-stated cases to the facts in this case, I find no clear and convincing evidence of misconduct or neglect by the father that would render him an unfit parent. If this parent is unfit on the grounds here cited, in disregard of the undisputed evidence of rehabilitation from the past mistake of drug abuse, then the authority of the courts to declare parents unfit has been dramatically expanded, and parents across this state stand in jeopardy of being declared unfit for matters such as financial irresponsibility and dependence on a parent, a substantially attenuated degree of fault inconsistent with the standard that has heretofore been applied.
The main opinion poses the question “[w]hy does it matter whether the father is declared unfit to have custody at this time
*674 since the father has lost his prima facie right to custody of the child by voluntary relinquishment?” 924 So.2d at 659. It matters because the trial court’s gratuitous finding of unfitness, in the absence of clear and convincing evidence, will become the law of this case and will have an unwarranted detrimental effect on any future attempt by the father to gain custody of the child. See Ex parte S.T.S., 806 So.2d 336 (Ala.2001). In other words, in a future modification proceeding, the father will have the unjustifiable burden of removing from his parental slate a previous determination of unfitness that was not supported by clear and convincing evidence. See Ex parte McLendon, 455 So.2d 863 (Ala.1984). The trial court’s gratuitous finding of the father’s unfitness, in a proceeding where no allegation in any pleading charged him with unfitness, where no witnesses testified that he was unfit, and where the guardian ad litem opined that there was no evidence to indicate he was unfit, should not stand.
SEE and HARWOOD, JJ., concur.