304 So.2d 604

**STATE of Alabama**

v.

**LEARY & OWENS EQUIPMENT COMPANY, INC., a corporation.**

**Civ. 335.**

Court of Civil Appeals of Alabama.

Dec. 11, 1974.

Bishop N. Barron, Montgomery, for appellee.

William J. Baxley, Atty. Gen., Willard W. Livingston, Philip C. Davis, Asst. Attys. Gen., Dept. of Revenue, for the State.

PER CURIAM.

This cause arose as a result of the State Department of Revenue, appellant here, levying against Leary and Owens Equipment Co., appellee (hereinafter called Leary-Owens) a gross receipts tax deficiency assessment for the period from August 1, 1967 through August 31, 1970.

On October 7, 1970 notice and demand for additional sales tax was served on Leary-Owens in the amount of $36,435.22 including interest of $2,906.45. Leary-Owens failed to pay the amount demanded and, on October 19, 1970, was served with a preliminary deficiency assessment of $36,435.22 and a penalty of $2,906.45. The total assessed was then $39,341.67. Appellee requested and was granted a hearing on the validity of the assessment. What transpired in the next twenty-two months does not appear of record, but on August 29, 1972 a final assessment of $47,053.27 was entered and appears of record. On September 20, 1972 Leary-Owens gave notice of appeal and paid the amount of the assessment in lieu of giving an appeal bond. The appeal was tried without a jury in the Circuit Court of Montgomery County by Judge Crosland, who rendered a final decree in favor of Leary-Owens as to every item entering into the assessment save one.

Leary-Owens does and has for a number of years sold and repaired heavy machinery used in forestry operations, road-building operations, and other kinds of construction work.

One of the items which Leary-Owens sold was a hydraulic machine used in logging operations for picking up fallen logs and sections of logs and placing them in position on the trucks which transported them to market. The machine was called a "Prentice Loader." It had no solid foundation or wheels and no engine or other source of power. In order to be functional it had to be firmly attached to a truck, tractor, or other automotive machine that would move it from place to place and supply power to its hydraulic lifter.

Most, though not all, of Leary-Owens' sales of Prentice Loaders were handled thusly:—The prospective purchaser, after the usual negotiations, would agree to purchase a particular Prentice Loader. The type and model specifications would be determined, the type of truck upon which it was to be mounted, and the sales price of the loader would be agreed upon. At the conclusion of the transaction, the purchaser would execute to Leary-Owens, for a recited consideration of one dollar and other good and valuable consideration, a bill of sale for the truck. The possession of the truck would then be turned over to Leary-Owens during the installation of the loader.

Two of Leary-Owens' officials testified that the purpose of the bill of sale was to avoid complicating the security interest retention that would be necessary for financing the transaction. Furthermore, Mr. Cumbus, the appellee's comptroller, testified that the taking of the title of the truck was as a part of the down payment on the purchase of the loader.

The sales price of Prentice Loaders ranged from $3,000 to $15,000, depending largely on the size of the loader. Apparently, the value of the truck was not taken into account in that no actual money was paid to the customer for the bill of sale and he was charged nothing when it was sold back to him as a part of the loader. In other words no tangible consideration was passed either way.

Subsection (*l*) of Section 786(2) of Title 51 of the 1958 Recompiled Code of Alabama reads:

"The term 'automotive vehicle' shall include a power shovel, dragline, crawl-

er, crawler crane, ditcher, or any similar machine which is self-propelled, in addition to self-propelled machines which are used primarily as instruments of conveyance."

Without argument, the Prentice Loader when attached to a truck or tractor is an "automotive vehicle." The State so concedes.

The gross receipts tax on the sale of an "automotive vehicle" is fixed by Section 786(3)(d) of Title 51, Code of Alabama 1940, as Recompiled 1958, at one and one-half percent, which was the rate collected and paid to the State by Leary-Owens when it sold a Prentice Loader already attached to its own truck or tractor. The State approved these transactions.

But, with but few exceptions, Section 786(3)(a) fixed the gross receipts tax on the sale of almost every item of personal property known to the mind of man at four percent. The Prentice Loader is not one of the exceptions. However, in all of the transactions in which Leary-Owens, having traded to sell and install a particular loader on a particular truck of a particular customer and then having taken a bill of sale to the truck and installed a Prentice Loader thereon and delivered the same back to its original owner together with the necessary document to pass back the title, assumed that they were selling the customer an "automotive vehicle" and collected the gross receipts tax of one and one-half percent.

The State contends that no matter what the purpose of the bill of sale, it was agreed between the parties that the vendee would hold the title and the truck only long enough to install the Prentice Loader and then would sell the truck along with the attached loader back to the customer at the agreed price of the loader and that the transaction was taxable under Section 786(3)(a), that is, at four percent. Commendably, the Department of Revenue does not accuse the taxpayer of participating in a "sham" or "bogus" transaction for the

purpose of evading or avoiding sales tax or other nefarious purpose, but it says that, whatever the purpose, it should not affect the tax rate on the sales price of the loader, and urges us to look through the form of these transactions to their substance so as not to permit a serious impairment of our taxing statutes. The supreme court has said that substance and not form must govern the determination of tax matters. Rust Engineering Co. v. State, 286 Ala. 589, 243 So.2d 695. We think and hold after looking through form to substance that under the circumstances, Leary-Owens took the title to the truck as trustee for its customer and that when it completed the sale of the Prentice Loader by delivering it back to its customer it was selling and delivering only the loader to the customer, and was only discharging the terms of the oral trust agreement by delivering the truck back to its vendor. We hold that the learned judge of the lower court erred in finding that the State erred in assessing appellee with an additional two and one-half percent gross receipts tax on the Prentice Loaders that were installed on buyer-owned trucks.

The second item of the deficiency assessment contested by appellee was based on sales of repair parts sold to county governments of the State of Florida. The parts purchased apparently were to be used in the repair of construction equipment, although that does not appear from the record. Appellee assumed that as units of another sovereign state, the Florida counties were exempt from the Alabama gross receipts tax and did not collect or pay the same. This item amounted to only $355.98. The State defends the assessment on these grounds: (1) Florida brought its machines either to appellee's Montgomery shop or its Mobile shop, where the repairs were made and the parts withdrawn from inventory; agents of the Florida counties took delivery of the repaired machines in Montgomery or Mobile; and no part of the transaction was conducted outside the State of Alabama; (2) that Florida's state sovereign-

ty stopped at the state lines; (3) that Alabama's state sovereignty extended to its state lines; (4) and that when Florida came into Alabama it became subject to Alabama's laws, including its gross receipts tax laws. There seems to be a dearth of law on the subject. Neither that cited by the State nor the appellee is directly on the point. And our research has turned up nothing directly in point.

We have concluded that unless there is something in the Federal constitution or the Alabama constitution or the Alabama statutory law or some judicial holding that it is unlawful for one state to collect a tax from another state or unit thereof on a transaction conducted from beginning to end in the first state, the law imposing the tax was as valid against the governmental units of the State of Florida as against an ordinary citizen of Alabama; wherefore, we hold that the trial court erred here. See Smith v. State, 64 Wash.2d 323, 391 P.2d 718.

■ The third item of the assessment attacked by Leary-Owens is that based on the tax on returned goods. The State disallowed the amounts refunded by Leary-Owens to its customers on returned merchandise because Leary-Owens charged the customer a service "handling" charge of ten to fifteen percent. The State contends that the statute is clear and quotes from Title 51, Section 786(2)(f), Code of Alabama 1940, as Recompiled 1958 as follows:

" . . . [A]nd 'gross proceeds of sales' shall not include the sale price of property returned by customers when the full sales price thereof is refunded either in cash or by credit. . . . "

Mr. Cumbus, an official of appellee, testified that they charged the customer fifteen percent because the factory to whom they returned the item or items charged them a lending fee of fifteen percent and that they were only recovering what the transaction cost them.

We think there is no ambiguity in the language of the statute as to the condition under which the term "gross proceeds of sales" are excluded from taxation. We believe the legislature intended that the exclusion would not be applicable unless the buyer was refunded or given credit for *all* of the money which he had paid for the item. If the seller may exact and retain fifteen percent of the purchase price and be excluded from the payment of the tax, why may it not retain fifty percent, or even ninety-nine percent, and be excluded? To us the words "full sales price" mean one hundred percent of the sales price. The trial court erred in not so finding.

■ We agree with the trial court and affirm his finding in Paragraph IV of his decree reading as follows:

"During the course of its business, Appellant traded-in an item of equipment after the repairs ordered by its customer had been completed in Appellant's repair shop. The trade-in usually came about as a result of the repair price exceeding the customer's expectation. After the trade was agreed upon, Appellant omitted the repair charges in reporting its sales on the theory that the repaired equipment, for all intents and purposes, was the property of Appellant at the time of the repair. The fact remains that at the time of the repair, the equipment in question belonged to Appellant's customers; therefore, such repairs are fully taxable in accordance with the determination made by Appellee."

■ The State's auditors found that during the period audited, Leary-Owens had withdrawn from inventory and permanently mounted on trucks, for use as demonstrators, at least two Prentice Loaders on which no gross receipts tax was paid at the time of withdrawal, and imposed tax on these items at one and one-half percent, amounting to $456.76 of the deficiency assessment. Appellee relies upon subsection (d) of Section 786(3) for its failure to pay

gross receipts tax on these items. Section 786(3)(d) reads in part as follows:

"There is hereby levied, . . . a . . . license tax . . . :

"(d) Upon every person, firm or corporation engaged . . . in the business of selling at retail any *automotive vehicle* . . ., an amount equal to one and one-half percent of the gross proceeds of sale of said *automotive vehicle* . . . provided, however, where a person subject to the tax provided for in this subsection withdraws from his stock in trade any *automotive vehicle* . . . for use by him or by his employee or agent in the operation of such business, there shall be paid, in lieu of the tax levied herein, a fee of five dollars per year or part thereof during which such *automotive vehicle*, . . . shall remain the property of such person. . . ." (Emphasis supplied.)

The State says in its brief that when the taxpayer is not a *"licensed automobile dealer,"* it should not have the benefit of that part of subsection (d) hereinabove quoted. It conveniently overlooks that throughout the statute, the words "automotive vehicle" are used instead of the word "automobile." Nor does the word "licensed" appear in subsection (d), *supra.* We have hereinabove determined that a Prentice Loader, when properly attached to a truck or trailer, is an "automotive vehicle" as defined by the revenue law; ergo, Leary-Owens, being a dealer in Prentice Loaders attached to trucks and tractors, is a dealer in automotive vehicles. Its demonstrators were not properly taxable, except for the annual $5.00 fee. We affirm the finding of the trial court in this regard.

■ Finally, appellee attacks the imposition of a penalty by the Commissioner of Revenue and points out that the State's examiners testified that appellee's officers and employees were cooperative during the audit, that they made no effort to conceal, and that they found no evidence of a fraudulent intent on the part of appellee. Appellee says, in effect, that the imposition of the penalty was unjust when appellee only exercised its constitutional right to have the court decide a legitimate dispute. Their argument is logical and we are sympathetic with their point of view, but unfortunately for them that does not seem to be the law. Section 786(15) of Title 51 of the Code provides that if the taxpayer pays less than is due, the Department of Revenue shall make demand for the deficit, and if not paid within ten days of such demand, or the taxpayer does not request an extension of time within ten days from the date of such demand, the Department *shall* make an assessment against the taxpayer of the amount due and *shall* add a penalty of one-half of one percent per month from the date such taxes or any part thereof became due. (Emphasis supplied.) We take this to mean when a deficiency is claimed by the State and demand is made by the State for the alleged deficiency and the taxpayer does not pay within ten days, the Department *must* make the assessment and impose the penalty, i. e., the use of the word "shall" in Section 786(15), *supra,* imports a mandatory connotation rather than a permissive one. See Morgan v. State, 280 Ala. 414, 194 So.2d 820. Section 786(15) further provides that, "the department may, if a good and sufficient reason is shown, waive or remit the penalty or a portion thereof."

By the language of this proviso, the Department is authorized to remit all or a portion of the penalty assessed; however, the discretion to do so is reposed in the Department, not the trial court or this court. We pretermit deciding whether the denial of the application for a waiver or remission would be reviewable by us, for such a question has not been presented for our consideration.

We have not overlooked appellee's reminder to us that we are not to reverse the trial court except in matters in which the trial court is plainly and palpably wrong,

but we must remind appellee that that rule applies only to the trial court's finding of facts. If we have ever seen a case loaded with law and lacking in disputed facts, this is it.

The foregoing opinion was prepared by Honorable T. Werth Thagard, Supernumerary Judge, serving as a Judge of this court under Section 24 of Act No. 987, Acts of Alabama 1969, p. 1744. His opinion is hereby adopted as that of the court.

Reversed and remanded for the rendition of a judgment in keeping with this opinion.

All the Judges concur.