The Commerce Clause of the United States Constitution states that "[t]he Congress shall have power . . . [t]o regulate commerce . . . among the several states. . . ." U.S. Const., Art. I, § 8, cl. 3. Notably absent from this text is any explicit prohibition on state regulation of interstate commercial activity. Nonetheless, the United States Supreme Court, in what is referred to as its "dormant" or "negative" Commerce Clause jurisprudence, has concluded that such a constitutional principle exists. "The negative or dormant implication of the Commerce Clause prohibits state taxation . . . or regulation . . . that discriminates against or unduly burdens interstate commerce and thereby `imped[es] free private trade in the national marketplace.'" General Motors Corp.v. Tracy, 519 U.S. 278, 287, 117 S.Ct. 811,136 L.Ed.2d 761 (1997) (quoting Reeves, Inc. v. Stake,447 U.S. 429, 437, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980)).
In this case, we granted certiorari review to consider whether the decision of the Court of Civil Appeals reversing a summary judgment in favor of Hoover, Inc., conflicted with our previous decision in this dispute, Hoover, Inc. v. State Dep't ofRevenue, 833 So.2d 32 (Ala. 2002) ("Hoover I"), and with the Supreme Court's negative Commerce Clause jurisprudence. Having determined that it does, we now reverse the judgment of the Court of Civil Appeals and remand the case.
 I Facts and Procedural History
In Hoover I, this Court set out the basic facts of this case as follows:
 "Hoover is a Tennessee corporation that sells crushed stones and other products in the southeastern United States. Hoover operates three sales offices in Alabama, and one of its quarries is located in Colbert County. During the years 1996 through 1999, Hoover sold crushed *Page 1151 
stone from the Colbert County facility to certain Mississippi governmental entities. It did not collect Alabama sales tax on those sales. On October 11, 2000, the Department entered a final assessment against Hoover, assessing $159,520.27 in additional sales tax due for the period July 1996 through June 1999."
833 So.2d at 33.
Hoover paid the final assessment under protest, and on November 13, 2000, Hoover sued the State Department of Revenue ("the Department") in the Colbert Circuit Court, appealing the imposition of the sales tax. See § 40-2A-7, Ala. Code 1975. Hoover asserted that it was entitled to a refund of the taxes it had paid under protest because, it argued, the State's practice of taxing sales to Mississippi governmental entities while exempting identical sales to itself, its counties, and its incorporated municipalities violated the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3.[1]
The Department moved for a summary judgment, asserting that it was not unconstitutional to tax sales to Mississippi governmental entities when those entities took delivery of goods in Alabama. In support of this argument, the Department relied exclusively on State v. Leary Owens EquipmentCo., 54 Ala.App. 49, 304 So.2d 604 (1974) (holding that Alabama could tax the sales of repair parts to county governments in Florida where the transactions were conducted entirely within Alabama). The trial court granted the Department's motion, and Hoover appealed.
On appeal to this Court, Hoover argued that Leary Owens was no longer an accurate statement of the law because it was decided before several significant negative Commerce Clause decisions of the United States Supreme Court.[2] The Department, however, continued to rely exclusively on Leary Owens, and chose to "completely ignore the United States Supreme Court decisions relied upon by Hoover." Hoover I, 833 So.2d at 34. In doing so, the Department passed on the opportunity to explain how and why the Supreme Court's negative Commerce Clause jurisprudence on which Hoover relied was inapplicable or distinguishable, essentially allowing Hoover's negative Commerce Clause argument to go unchallenged.
In reversing the summary judgment in favor of the Department and remanding the case, a unanimous Court agreed that Leary Owens was not controlling and that the Supreme Court's negative Commerce Clause jurisprudence was applicable. The Court agreed with Hoover's contention that Alabama's sales-tax-exemption *Page 1152 
scheme facially discriminated against interstate commerce and thus was "`"virtually per se invalid."'" Hoover I,833 So.2d at 35 (quoting Fulton Corp. v. Faulkner,516 U.S. 325, 331, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), quoting in turn Oregon Waste Sys., Inc. v. Department of Envtl.Quality of Oregon, 511 U.S. 93, 99, 114 S.Ct. 1345,128 L.Ed.2d 13 (1994)). The Court concluded that "the trial court erred in entering a summary judgment in favor of the Department on a record where the Department offered no evidentiaryjustification for the discriminatory impact."833 So.2d at 36 (emphasis added).
Following our remand in Hoover I, both parties filed cross-motions for a summary judgment. At an evidentiary hearing on both motions, the circuit court heard testimony from two witnesses. Hoover offered the testimony of George Bright, Hoover's secretary-treasurer, and the Department offered the testimony of Dan Lawrence, the State revenue agent who had conducted the audit resulting in Hoover's assessment of back taxes.
George Bright's testimony generally described the nature of the transactions between Hoover and its governmental customers in Mississippi. Bright explained that the Mississippi governmental entities typically solicited bids for crushed stone by mail, and if Hoover was the lowest bidder, the entities would either request that Hoover deliver the stone across state lines, or, more commonly, the entities would send their trucks to Hoover's quarry in Colbert County to pick up the stone. Bright stated that Hoover treated the latter sales as nontaxable, in part because the Mississippi governmental entities refused to pay sales tax on the transactions.
In his testimony, Dan Lawrence described the methodology of his audit, and he stated that the back-tax assessment was based only on those transactions in which the Mississippi governmental entities took delivery of the stone in Alabama. When he was asked to provide a justification for the discriminatory effect of the sales-tax exemption, i.e., for not taxing sales to Alabama governmental entities but taxing certain sales to Mississippi governmental entities, Lawrence could not do so. The Department offered no other evidentiary proof in support of any justification for the discriminatory impact of the tax.
Following the evidentiary hearing and the arguments of counsel, the circuit court entered a summary judgment in Hoover's favor. The circuit court concluded that the Department had failed to establish a justification for the discriminatory taxation, as required by Hoover I, and, therefore, that Hoover was entitled to a refund of the sales taxes it had paid under the assessment and to interest. In so holding, the circuit court found that "[a]lthough rationalizations for the disparaging treatment conceivably exist, the Department offered noevidence, which would justify the facially discriminatory scheme of taxation." (Emphasis added.)
The Department appealed the summary judgment to the Court of Civil Appeals, which reversed the judgment of the circuit court and remanded the case with instructions to enter a judgment for the Department. We granted Hoover's petition for certiorari review, and we now reverse and remand.
 II Standard of Review
It is well established that this Court reviews a summary judgment de novo, with the understanding that we must review the record in the light most favorable to the nonmoving party and resolve all reasonable doubts in favor of the nonmovant.Fitts v. AmSouth Bank, 917 So.2d 818, 821 (Ala. 2005); and American Gen. Life Ace. Ins. Co. v.Underwood, 886 So.2d 807, 811 (Ala. 2004). Moreover, *Page 1153 
"[w]here the facts are not in dispute and we are presented with a pure question of law, as here, this Court's review is de novo." Christian v. Murray, 915 So.2d 23, 25
(Ala. 2005).
 III. Analysis
With any case involving the negative Commerce Clause, courts are confronted with the unenviable task of interpreting and applying a jurisprudence that is complicated, convoluted, and often criticized. See, e.g., Camps Newfound/Owatonna, Inc.v. Town of Harrison, 520 U.S. 564, 610, 117 S.Ct. 1590,137 L.Ed.2d 852 (1997) (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., dissenting) ("The negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application.");Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,514 U.S. 175, 200, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995) (Scalia, J., joined by Thomas, J., concurring in the judgment) ("[T]he `negative Commerce Clause' . . . is `negative' not only because it negates state regulation of commerce, but also because it does not appear in the Constitution."); WardairCanada, Inc. v. Florida Dep't of Revenue, 477 U.S. 1, 17,106 S.Ct. 2369, 91 L.Ed.2d 1 (1986) (Burger, C.J., concurring in part and concurring in the judgment) (referring to "the cloudy waters of this Court's `dormant Commerce Clause' doctrine"); Kassel v. Consolidated Freightways Corp. ofDel, 450 U.S. 662, 706, 101 S.Ct. 1309, 67 L.Ed.2d 580
(1981) (Rehnquist, J., joined by Burger, C.J., and Stewart, J., dissenting) ("[T]he jurisprudence of the `negative side' of the Commerce Clause remains hopelessly confused."); andNorthwestern States Portland Cement Co. v. Minnesota,358 U.S. 450, 457, 458, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959) (calling the Court's negative Commerce Clause jurisprudence a "tangled underbrush" and a "quagmire"). Fortunately, because of our previous decision in Hoover I, we need not journey far into this tangled underbrush.
In Hoover I, this Court concluded:
 "Because at trial the Department has the burden of proof to justify a law that on its face discriminates against interstate commerce, the trial court erred in entering a summary judgment in favor of the Department on a record where the Department offered no evidentiary justification for the discriminatory impact."
833 So.2d at 36 (emphasis added). Hoover I established, therefore, that the transactions at issue in this case — sales of crushed stone to Mississippi governmental entities that were completed within Alabama — constituted interstate commerce and that the tax-exemption scheme before us facially discriminated against interstate commerce. As a result, these conclusions of law governed the proceedings below under the law-of-the-case doctrine, and they guide us on this appeal.See ECO Pres. Servs., LLC v. Jefferson County Comm'n,933 So.2d 1067, 1071 n. 7 (Ala. 2006) (quoting Blumberg v.Touche Ross Co., 514 So.2d 922, 924
(Ala. 1987))("`[W]hatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct and they guide us on this appeal on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'" (emphasis omitted)).
We recognize that under § 12-2-13, Ala. Code 1975, the law-of-the-case doctrine does not preclude us from reconsidering our previous decision in Hoover I if we conclude that it was wrongly decided. We exercise this authority, however, only when a party presents the necessity and duty to reconsider a former ruling as an issue on appeal.See Baer v. Alco Land *Page 1154 Timber Co., 291 Ala. 640, 643-44, 285 So.2d 913, 915
(1973); and National Commercial Bank v. McDonnell,92 Ala. 387, 390-91, 9 So. 149, 149-50 (1891).
Here, the Department has not cited § 12-2-13, Ala. Code 1975, and has not argued that we misapprehended the law in Hoover I. Neither does it argue that our decision inHoover I was unsound under the United States Supreme Court's negative Commerce Clause jurisprudence or any other authority. Instead, the Department contends that in HooverI "[t]his Court did not decide that the Commerce Clause was implicated. . . . Before remand, this Court had no factual evidence on which to base a decision, which is exactly why the case was remanded." Department's brief at 13 (emphasis in original). The Department asserts that on remand it "submitted factual evidence that the transactions at issue occurred fully within the State of Alabama," id., and, as a result, the law-of-the-case doctrine was not applicable in the proceedings below and does not apply here.
This argument is clearly without merit. The Department's characterization of our decision in Hoover I is plainly contradicted by the explicit language in that opinion. Certainly we could not have concluded that "the Department ha[d] the burden of proof to justify a law that on its face discriminates against interstate commerce," 833 So.2d at 36, without first finding that the transactions at issue constituted interstate commerce.[3]
Furthermore, to the extent the Department's argument can be interpreted as a claim that we erred in so holding inHoover I, it is unpersuasive. At its base, the Department's argument rests on an obsolete conception of what constitutes interstate commerce under negative Commerce Clause jurisprudence. On this appeal, the Department continues to argue that "at no time during the transaction[s] between Hoover and the Mississippi governmental entities was the concept of interstate commerce implicated . . . [because] the entire transactions] occurred and closed within Alabama." Department's brief at 16. Inexplicably, the Department once again relies onLeary Owens in support of this claim.
Rightfully or wrongfully, the fact that a transaction is completed within a state's borders no longer is dispositive in determining whether the transaction constitutes interstate commerce. The Supreme Court has made it clear that "`[t]he definition of "commerce" is the same when relied on to strike down or restrict state legislation as when relied on to support some exertion of federal control or regulation.'" CampsNewfound/Owatonna, 520 U.S. at 574, 117 S.Ct. 1590
(quoting Hughes v. Oklahoma, 441 U.S. 322, 326 n. 2,99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). Considering the wide swath of economic *Page 1155 
activity that constitutes interstate commerce today, see,e.g., Heart of Atlanta Motel, Inc. v. United States,379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964)("`(i)f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze'"), we cannot accept the Department's contention that the Commerce Clause was not implicated by the transactions at issue here.
This case hinges, therefore, on whether the Department submitted an "evidentiary justification for the discriminatory impact" of the sales-tax exemption, as required by HooverI and the negative Commerce Clause jurisprudence discussed in that opinion. 833 So.2d at 36. On remand, the sole justification offered by the Department was that of "administrative convenience." In reversing the trial court's judgment and upholding the sales-tax-exemption scheme, the Court of Civil Appeals concluded that this justification (which the Department presented not by way of admissible evidence but in its memorandum in support of its summary-judgment motion) was sufficient to satisfy this Court's mandate in HooverI and the Department's heavy burden under the "virtually per se invalid" standard. The Court of Civil Appeals stated:
 "[T]he Department offers the following justification:
 "`The sales tax exemption mitigates the administrative costs of an Alabama governmental entity having to pay sales tax to the State, and then having the State refund and disburse a portion, if any, of the tax right back to the Alabama entity to fund various governmental functions. This is an unnecessary step, as it is simpler to just exempt the Alabama entities from having to pay the sales tax in the first place.'
 "We believe this is a logical, and reasonable, justification. We do not read the Commerce Clause, nor any of the cases cited to us by Hoover or discussed by our Supreme Court in Hoover I, as requiring a contrary conclusion in the context presented here."
State Dep't of Revenue v. Hoover, Inc.,956 So.2d 1142, 1146 (Ala.Civ.App. 2005) (footnote omitted).
We disagree. Because it is clear from our decision inHoover I that the virtually per se rule of invalidity is applicable, see 833 So.2d at 35, the Department was charged with demonstrating on remand that the sales-tax-exemption scheme at issue here "`"advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."'" CampsNewfound/Owatonna, 520 U.S. at 581, 117 S.Ct. 1590
(quoting Oregon Waste, 511 U.S. at 101,114 S.Ct. 1345, quoting in turn New Energy Co. of Indiana v.Limbach, 486 U.S. 269, 278, 108 S.Ct. 1803,100 L.Ed.2d 302 (1988)).[4] After reviewing the record in this case, we conclude that the Department has simply failed to carry this burden.[5] *Page 1156 
Although the Department asserts that the sales-tax exemption mitigates administrative costs, at no point in this entire dispute has the Department explained this contention in any detail or offered any evidence in support of it. The Department has not attempted to estimate the amount of administrative costs purportedly saved by the sales-tax exemption for Alabama governmental entities, nor has it described how sales-tax revenues are distributed within Alabama. Clearly implied in the Department's justification is the claim that local governments receive a portion of the sales-tax revenues collected by the State and that they use those revenues "to fund various governmental functions." The Department, however, fails to even allege, much less prove, that this flow of funds actually occurs. If it does not, clearly the Department's justification fails. Without any evidence or argument on this point, we lack the basic facts necessary to evaluate the Department's offered justification.
Furthermore, at best, the Department's administrative-convenience justification, if properly supported, might constitute a legitimate local purpose. This alone, however, is insufficient. The Department has not presented any evidence to this Court or any other court with respect to the second prong of the analysis. Although nondiscriminatory alternatives obviously exist, such as exempting sales to all out-of-state governments, the Department fails to explain why those alternatives are insufficient or unreasonable.
The closest the Department comes to making such an argument is the last sentence of its brief to this Court, in which it states that if we reverse the judgment of the Court of Civil Appeals, "the loss of sales tax revenues will increase the financial strain on a state already in crisis." Department's brief at 27. This bare allegation alone, however, is not sufficient. Again, nowhere in the record does the Department explain this claim with any specificity.
The United States Supreme Court has stated that "facial discrimination [on interstate commerce] invokes thestrictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives."Hughes v. Oklahoma, 441 U.S. at 337, 99 S.Ct. 1727
(emphasis added). The Court has also declared that "[t]his is an extremely difficult burden, `so heavy that "facial discrimination by itself may be a fatal defect."'" CampsNewfound/Owatonna, 520 U.S. at 582, 117 S.Ct. 1590;see Chemical Waste Mgmt., Inc. v. Hunt, 504 U.S. 334,342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) ("Once a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry."). Considering this case-law, we cannot conclude that the Department's mere argument in its brief of administrative convenience as justification for the discriminatory sales-tax exemption is sufficient to carry its heavy burden under this doctrine.
 IV. Conclusion
Because the Department has failed, once again, to provide any evidentiary support to justify the discriminatory sales-tax exemption at issue here, we reverse the judgment of the Court of Civil Appeals and *Page 1157 
remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
PARKER, J., concurs in the result.
[1] Section 40-23-4(a)(11), Ala. Code 1975, exempts from Alabama sales tax "[t]he gross proceeds of sales of tangible personal property to the State of Alabama, to the counties within the state and to incorporated municipalities of the State of Alabama."
[2] Hoover also contended that the certain language inLeary Owens demonstrated that it offered no precedential value. In concluding that the tax at issue inLeary Owens was valid, the Court of Civil Appeals stated:
 "There seems to be a dearth of law on the subject. Neither that cited by the State nor the appellee is directly on the point. And our research has turned up nothing directly in point.
 "We have concluded that unless there is something in the Federal constitution or the Alabama constitution or the Alabama statutory law or some judicial holding that it is unlawful for one state to collect a tax from another state or unit thereof on a transaction conducted from beginning to end in the first state, the law imposing the tax was as valid against the governmental units of the State of Florida as against an ordinary citizen of Alabama. . . . "
Leary Owens, 54 Ala.App. at 53,304 So.2d at 607-08 (emphasis added).
[3] Moreover, any contention that this issue was not presented in Hoover I is spurious. In HooverI, the Department made the following argument in its brief:
 "In the instant case, Hoover is making retail sales of crushed stone and other products to Mississippi counties and is not collecting Alabama or local sales tax. The plant where delivery of goods is taken is located in Allsboro, Colbert County, Alabama. The transaction was conducted and it was completed within the State of Alabama. It was a closed transaction within the State of Alabama. There was no interstate activity taxed by the Department in violation of the Commerce Clause of the U.S. Constitution."
Department's brief in Hoover I at 2 (emphasis added). As this passage indicates, the argument that the transactions at issue were solely intrastate transactions was presented inHoover I, and our opinion clearly shows that we rejected the argument.
[4] In the proceeding below, the Court of Civil Appeals correctly recognized that this test was applicable. The court stated that "`the [tax scheme] must be invalidated unless the [Department] can "sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."'" 956 So.2d at 1145 (quotingOregon Waste Sys., 511 U.S. at 100-01, 114 S.Ct. 1345, quoting in turn New Energy, 486 U.S. at 278,108 S.Ct. 1803) (alterations in Hoover, Inc.).
[5] The Department does not cite this standard or provide any discussion with respect to this standard anywhere in its brief to this Court. Instead, the Department cites Complete AutoTransit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076,51 L.Ed.2d 326 (1977), and presents its argument under the framework adopted in that case. In Complete Auto, the Supreme Court adopted a four-part test for evaluating state taxation under the negative Commerce Clause. The CompleteAuto test is inapplicable here, however, because one of its four requirements is that a tax not "discriminate against interstate commerce." 430 U.S. at 279, 97 S.Ct. 1076.