These parties have previously been before both this court,see State Dep't of Revenue v. Hoover, Inc.,956 So.2d 1157 (Ala.Civ.App. 2006), and State Dep't of Revenue v.Hoover, Inc., 956 So.2d 1142 (Ala.Civ.App. 2005), and the Alabama Supreme Court, see Ex parte Hoover, Inc.,956 So.2d 1149 (Ala. 2006), and Hoover, Inc. v. State Dep't ofRevenue, 833 So.2d 32 (Ala. 2002), in previous litigation (hereinafter sometimes collectively referred to as "theHoover I litigation"), involving the same fundamental issue that is the subject of this appeal, except that theHoover I litigation and the present case deal with different tax years and different amounts of sales taxes assessed by the Alabama Department of Revenue ("the Department").
 Relevant Background Facts Procedural History
Hoover, Inc., is a Tennessee corporation headquartered in LaVergne, Tennessee. Hoover is engaged in the retail sale of crushed stone and other products in Alabama, Mississippi, and Tennessee. Hoover owns and operates three rock quarries in Alabama, one of which is located in Colbert County. Some of Hoover's customers are governmental entities in both Alabama and Mississippi. During the years in question here, and during the years in question in the Hoover I litigation, Hoover sold its products to Alabama and Mississippi governmental entities and neither collected nor paid sales tax on those transactions.
Pursuant to § 40-23-4(a)(11), Ala. Code 1975, Alabama governmental entities are exempt from paying sales tax on transactions in which an Alabama sales tax would normally apply. That statute contains no such exemption for out-of-state governmental entities. Therefore, the Department entered tax assessments against Hoover because it had failed to collect or pay sales tax on sales of its crushed stone and other products to Mississippi governmental entities that took place in Alabama. In the Hoover I litigation, the Department entered a final tax assessment against Hoover in the amount of $159,520.97, covering the period from July 1996 through June 1999. In the present case, the Department entered a final tax assessment against Hoover in the amount of $133,892.06, covering the period from May 2000 through April 2003. Hoover paid both of the tax assessments under protest.
Arguing that the exemption for Alabama governmental entities violated the Commerce Clause of the United States Constitution (Art. 1, § 8, cl.3) because there was no analogous exemption for out-of-state governmental entities, Hoover appealed the tax assessment in the Hoover I litigation by filing a complaint in the Colbert Circuit Court. The Department then moved for a summary judgment, asserting that it was not unconstitutional to exempt Alabama governmental entities from the sales tax while imposing the sales tax on out-of-state governmental entities when those entities took delivery of the goods in Alabama. The trial court entered a summary judgment in favor of the Department.
The Alabama Supreme Court reversed the trial court's judgment and remanded the cause, holding that the sales-tax exemption in § 40-23-4(a)(11) facially discriminated against interstate commerce, and was thus "`"virtually per se invalid,"'" and that a genuine issue of material fact existed as to "the Department's justification for any discriminatory treatment in assessing sales taxes." Hoover, Inc. v. State Dep't ofRevenue, 833 So.2d at 35, 36 (quoting Fulton Corp. v.Faulkner, *Page 891 516 U.S. 325, 331, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996)). The supreme court specifically stated that the Department had "completely ignore[d]" the United States Supreme Court cases relied on by Hoover for the proposition that the tax-exemption statute discriminated against interstate commerce and had, instead, relied on State v. Leary Owens EquipmentCo., 54 Ala. App. 49, 304 So.2d 604 (Civ. 1974) (holding that Alabama could tax the sales of repair parts to county governments in Florida when the transactions were conducted entirely within Alabama), for its contention that taxing out-of-state governmental entities on transactions that take place in Alabama is constitutional. Hoover, Inc. v. StateDep't of Revenue, 833 So.2d at 34. In Ex parteHoover, 956 So.2d at 1151, the supreme court subsequently explained that, by ignoring the United States Supreme Court decisions relied upon by Hoover, "the Department passed on the opportunity to explain how and why the Supreme Court's negative Commerce Clause jurisprudence on which Hoover relied was inapplicable or distinguishable, essentially allowing Hoover's negative Commerce Clause argument to go unchallenged."
On remand, and following an evidentiary hearing, the trial court entered a summary judgment in Hoover's favor, concluding that the Department had failed to establish a justification for the discriminatory taxation and that, "`[a]lthough rationalizations for the disparaging treatment conceivably exist, the Department offered no evidence, which would justify the facially discriminatory scheme of taxation.'"Ex parte Hoover, 956 So.2d at 1152. The Department appealed the judgment in favor of Hoover to this court, which concluded that the Department had met its evidentiary burden to provide justification for the scheme of taxation in question.See State Dep't of Revenue v. Hoover, Inc.,956 So.2d 1142. In an opinion authored by Judge Murdock, this court held that the Department had offered a "logical, and reasonable, justification" for the tax scheme by arguing that the sales-tax exemption for Alabama governmental entities mitigates the administrative costs of an Alabama governmental entity's having to pay sales tax to the State and then having the State disburse a portion of the tax right back to the entity to fund its various operations. 956 So.2d at 1146. This court, therefore, reversed the trial court's judgment and remanded the case with instructions for the trial court to enter a judgment for the Department. Id. at 1147.
However, the Alabama Supreme Court reversed this court's decision. Ex parte Hoover, 956 So.2d at 1156-57. The supreme court held that because the tax scheme in question was subject to the "virtually per se" rule of invalidity, the Department was required to provide evidentiary justification — not just legal argument — showing that the tax scheme "`"advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."'" Ex parte Hoover, 956 So.2d at 1155
(quoting Camps Newfound/Owatonna, Inc. v. Town ofHarrison, 520 U.S. 564, 581, 117 S.Ct. 1590,137 L.Ed.2d 852 (1997)). The court then determined that the Department had failed to meet its evidentiary burden. Id. at 1156. On remand after reversal, this court affirmed the trial court's judgment in favor of Hoover. State Dep't of Revenue v.Hoover, Inc., 956 So.2d 1157.
The Department's subsequent $133,892.06 final tax assessment against Hoover, covering the period from May 2000 through April 2003, is the subject of the current appeal. Hoover filed a complaint in the Colbert Circuit Court, appealing *Page 892 
that assessment and requesting a refund. After theHoover I litigation was concluded, Hoover moved the trial court to enter a summary judgment in its favor in this case, arguing that the appellate decisions in the HooverI litigation were dispositive of the current case; that the doctrine of collateral estoppel barred relitigation of the issue of whether the Department had established a justification for the facially discriminatory tax scheme; and that the Department continued to fail in meeting its heavy burden of presenting evidence to justify the facially discriminatory tax scheme. The Department countered that Hoover was not entitled to a summary judgment because, it asserted, the decisions in the Hoover I litigation are not dispositive of the current case, which is based on different tax years, and that the affidavit of Joseph W. Cohen, the director of the Sales, Use, and Business Tax Division of the Department, constituted evidence tending to show that the tax scheme is justifiable.[1]
The trial court subsequently entered a summary judgment in favor of Hoover.
The Department timely appealed the judgment to this court pursuant to § 12-3-10, Ala. Code 1975, contending that the trial court had erred in entering a summary judgment in favor of Hoover for the following reasons: 1) the decisions in theHoover I litigation are not dispositive of this case and the doctrine of collateral estoppel does not apply to bar the Department's claim; and 2) the Department presented a genuine issue of material fact through the uncontradicted affidavit of Cohen, which, it says, offered specific justifications for the differing treatment of in-state and out-of-state governmental entities under § 40-23-4(a)(11).
The trial court's order granting Hoover's summary-judgment motion did not specify the ground, or grounds, upon which it had based its decision. Therefore, we will assume, for the purposes of this appeal, that the trial court agreed with *Page 893 
both the collateral-estoppel and the failed-justification assertions by Hoover.
After the Department filed its appeal with this court, the United States Supreme Court decided the case of UnitedHaulers Association, Inc. v. Oneida-Herkimer Solid WasteManagement Authority, 550 U.S. 330, 127 S.Ct. 1786,167 L.Ed.2d 655 (2007), which dealt with state regulations that affect interstate commerce. Both parties moved for leave to supplement their briefs based on the decision in UnitedHaulers, and this court granted their motions.
In light of United Haulers, the Department now additionally contends that the trial court's summary judgment against the Department was in error because, it alleges, according to the principles set out in United Haulers
and in contrast to the Alabama Supreme Court's determination in the Hoover I litigation, § 40-23-4(a)(11) does not facially discriminate against interstate commerce.
 Standard of Review
The standard of review this court applies to a summary judgment is well established
 "`"The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'
 "`"In our review of a summary judgment, we apply the same standard as the trial court. Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant."'"
Hoover, Inc. v. State Dep't of Revenue,833 So.2d at 34 (quoting Payton v. Monsanto, 801 So.2d 829, 832-33
(Ala. 2001), quoting in turn Ex parte Alfa Mut. Gen. Ins.Co., 742 So.2d 182, 184 (Ala. 1999)) (citations omitted). Furthermore, this court's review of a summary judgment is de novo. Ex parte Hoover, 956 So.2d at 1152.
 Analysis I. United Haulers
The United States Supreme Court in United Haulers held that flow-control ordinances requiring trash haulers to deliver solid waste to a government-operated waste-processing facility do not discriminate against interstate commerce. Recognizing that the disposal of trash has traditionally been a state-government activity, the Court specifically held that "laws that favor the government in such areas — but treat every private business, whether in-state or out-of-state, exactly the same — do not discriminate against interstate commerce for purposes of the Commerce Clause." UnitedHaulers, 550 U.S. at ___, 127 S.Ct. at 1790.
The Department argues that the Court's declaration that laws treating in-state and out-of-state private-business interests equally do not discriminate against inter-state commerce provides controlling authority for their assertion that the tax scheme in question in this case does not facially discriminate against interstate commerce, because, the Department asserts, the tax-exemption statute treats all *Page 894 
in-state and out-of-state private interests, and out-of-state public interests, the same.
Although the Department's contention is a logical and reasonable extension of the principles espoused in UnitedHaulers, that decision is not one that is directly applicable to the case at hand. United Haulers dealt with a flow-control ordinance as opposed to a tax exemption. Furthermore, United Haulers did not specifically hold that all regulations treating in-state and out-of-state private entities, and out-of-state public entities, the same do not facially discriminate against inter-state commerce. Regardless of whether this court is inclined to agree with the Department's extension of the applicability of UnitedHaulers to the case at hand, in the absence of a directly contrary United States Supreme Court decision, we are bound by the decisions of the Alabama Supreme Court in the HooverI litigation, which held that the Department had not rebutted Hoover's showing that the tax scheme in question was "facially discriminatory." Hoover, Inc. v. State Dep't ofRevenue, 833 So.2d at 35-36. See also Ex parteHoover, 956 So.2d at 1153.
The Department's current appeal involves a tax assessment against the same party, based on the same statute, § 40-23-4(a)(11), Ala. Code 1975, as applied against sales of the same products to the same buyers — namely, Mississippi governmental entities — as in the Hoover I
litigation. The only difference is that this appeal deals with different tax years and a different tax assessment. Therefore, this court is without authority to overrule the Alabama Supreme Court's previous determination that the tax scheme in question facially discriminates against interstate commerce.See § 12-3-16, Ala. Code 1975 (declaring that the decisions of the Alabama Supreme Court shall govern the holdings and decisions of the courts of appeals); Jones v.City of Huntsville, 288 Ala. 242, 259 So.2d 288 (1972); and Stack v. Stack, 646 So.2d 51 (Ala.Civ.App. 1994).See also Fleming v. State, 972 So.2d 835, 837
(Ala. 2007) (citing § 12-3-16 and Jones, supra, and holding that decisions of the Alabama Supreme Court are the law of this State unless overruled or abrogated by that court or the United States Supreme Court).
 II. Collateral Estoppel
In its motion for a summary judgment, Hoover asserted that the decisions in the Hoover I litigation were dispositive of the case at hand because the same issue was presented and decided, along with virtually identical facts and circumstances, and the doctrine of collateral estoppel prevents the matter from being relitigated. The Department argued that collateral estoppel does not apply to the present claim because the case at hand involves different tax years and a different tax assessment. It also asserted that the merits of the issue were never reached in the Hoover I litigation because, it said, the Alabama Supreme Court determined only that the Department had presented no evidence to support its position, not that its position was incorrect. See Ex parteHoover, 956 So.2d at 1156.
In Smith v. Union Bank Trust Co., 653 So.2d 933
(Ala. 1995), the Alabama Supreme Court outlined the four elements required for the doctrine of collateral estoppel, or issue preclusion, to apply. According to that decision, the following must be established: (1) that an issue in a prior action was identical to the issue being litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions. Id. at 934. Seealso Dairyland Ins. Co. v. Jackson, 566 So.2d 723, *Page 895 
726 (Ala. 1990). According to the Department, the first requirement has not been met because, it contends, in a tax case, the doctrine of collateral estoppel does not apply when the litigation involves different tax years. In support of this assertion, the Department relies on this court's decision inState v. Delaney's, Inc., 668 So.2d 768
(Ala.Civ.App. 1995), and the United States Supreme Court's decisions in Commissioner of Internal Revenue v.Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), and Limbach v. Hooven Allison Co., 466 U.S. 353,104 S.Ct. 1837, 80 L.Ed.2d 356 (1984). Those three cases, however, do not support the Department's position that collateral estoppel does not apply to the present case simply because different tax years are involved. In fact, they support the proposition that collateral estoppel bars the relitigation of any issue in a tax case when the controlling facts and applicable legal rules remain the same as in a prior litigation.
In Commissioner v. Sunnen, the United States Supreme Court held that the doctrine of collateral estoppel did not apply to bar the Commissioner of Internal Revenue from relitigating a tax issue that was identical to one previously decided in a case between the same parties, involving the same contract, but involving different tax years. The Court held that collateral estoppel did not apply because a line of cases, decided after the resolution of the previous action against the taxpayer, had sufficiently changed the legal climate surrounding the issue at hand and that application of the principles currently in effect in light of that subsequent line of cases might have produced a different result from that reached in the previous action. Sunnen,333 U.S. at 606-07, 68 S.Ct. 715.
The Court explained that although the doctrine of res judicata does not apply to tax litigation involving different tax years, the doctrine of collateral estoppel does apply to tax litigation involving different tax years, but "only as to those matters in the second proceeding which were actually presented and determined in the first suit." Id. at 598,68 S.Ct. 715. Collateral estoppel, therefore, "operates . . . to relieve the government and the taxpayer of `redundant litigation of the identical question of the statute's application to the taxpayer's status.'" Id. at 599,68 S.Ct. 715 (quoting Tait v. Western Md. R. Co.,289 U.S. 620, 624, 53 S.Ct. 706, 77 L.Ed. 1405 (1933)). However, the Court further explained that even if a taxpayer secures a judicial determination of a particular tax question, "a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes." Id.
The Court provided the following analysis of the application of the doctrine of collateral estoppel to tax cases:
 "[Collateral estoppel] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.
 "And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. . . .
[W]here the situation is vitally altered between the time of the *Page 896 
first judgment and the second, the prior determination is not conclusive. . . .
 ". . . [I]f the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. . . . Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment."
Sunnen, 333 U.S. at 599-602, 68 S.Ct. 715 (emphasis added).
In Limbach, the Supreme Court again addressed the applicability of the doctrine of collateral estoppel to a tax case that involved the same parties, the same tax, the same issue, and the same type of goods that were in dispute in a previous case; the only difference was that the two cases involved different tax years. The tax at issue inLimbach was a state ad valorem tax on certain materials imported from outside the United States. The United States Supreme Court had previously decided that the same tax, as applied to the materials in question, was unconstitutional because it violated the Import-Export Clause of the United States Constitution, Art. I, § 10, cl. 2. SeeLimbach, 466 U.S. at 356, 104 S.Ct. 1837.
Because the case involved different tax years, but presented the same facts, issue, and questions, the Limbach
Court determined that Sunnen was applicable and controlling. The Court then summarized the holding inSunnen as follows:
 "[In Sunnen,] [a]n earlier decision of the Board of Tax Appeals, involving the same facts, questions, and parties but different tax years, was held not to be conclusive under the doctrine of collateral estoppel because certain intervening decisions of this Court made manifest the error of the result that had been reached by the Board."
Limbach, 466 U.S. at 362, 104 S.Ct. 1837 (emphasis added). The Court held that, since the decision in the previous case between the parties had been rendered, the constitutional analysis of the issue in question had been fundamentally changed by an intervening decision of the Court. Therefore, collateral estoppel did not apply because the previous decision was based upon a repudiated legal doctrine. Id.
at 363, 104 S.Ct. 1837.
This court based its decision in State v. Delaney's,Inc., in part, on principles established inSunnen and Limbach. Deciding an issue of first impression in Alabama, the court held that, in general, "an ad valorem tax assessment for one tax year has no preclusive effect in future tax years, there being a separate cause of action for each tax year." Delaney's,668 So.2d at 773. We specifically determined in Delaney's
that collateral estoppel did not bar the Revenue Commissioner of Mobile County from reclassifying real property owned by taxpayers for the purpose of assessing ad valorem taxes based on "fair market" value, despite the fact that, in previous years, the real property in question had been classified as property subject to ad valorem taxes based on "current *Page 897 
use" value.[2] Id.
In Delaney's, whether the property in question conformed to the appropriate criteria required for the "current use" valuation to apply could change from year to year, depending on the current facts surrounding the use of the property. Id. at 774. This court noted that collateral estoppel "`is not meant to create vested rights in decisions that have become obsolete or erroneous with time.'"Delaney's, 668 So.2d at 774 (quoting Sunnen,333 U.S. at 599, 68 S.Ct. 715) (emphasis omitted). Therefore, we concluded that collateral estoppel did not apply to the issue at hand. Delaney's, 668 So.2d at 774.
In all three cases cited by the Department, the courts held that the doctrine of collateral estoppel can apply to tax cases involving different tax years if the same issues were actually presented and determined in the first action, and
"`the controlling facts and applicable legal rules remainun changed.'" Delaney's, 668 So.2d at 772
(quoting Sunnen, 333 U.S. at 600, 68 S.Ct. 715) (emphasis added). However, when the controlling facts or applicable legal rules have significantly changed, collateral estoppel does not bar relitigation of the same issue previously decided. See Sunnen, supra; Limbach, supra; and Delaney's, supra. The Department is, there-fore, incorrect in its assertion that Sunnen, Limbach, andDelaney's support the proposition that collateral estoppel does not apply simply because the litigation involves different tax years.
Even though all three of the above-mentioned cases held that collateral estoppel did not apply to the respective case at hand, all three cases are distinguishable from the present case. Sunnen and Limbach involved a change in the applicable legal rules between the first and second lawsuits and Delaney's involved a change in the controlling facts between the first and second lawsuits. In this case, there has been no "doctrinal change" or change in the "controlling facts." Rather, this case deals with the same parties, the same type of sales transaction, the same tax-exemption statute, and the same issue — whether Alabama governmental entities can be exempted from paying the sales tax when out-of-state governmental entities are not exempted — and there has been no change in any controlling facts, legal analysis, or doctrinal principle upon which the original decisions in the Hoover I litigation were based.
The Department additionally contends that the tax-exemption issue in the Hoover I litigation was not actually litigated and that there was no decision on the merits because, it says, the Supreme Court of Alabama simply held that the Department had introduced "no evidence" to justify the alleged discriminatory sales-tax exemption. The Department implies that because a summary judgment was entered against it, the issue at hand was neither "actually litigated" nor decided "on the merits." That contention, however, is in direct contradiction to the nature of a summary judgment, which is a conclusive judgment rendered upon a determination that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. See Rule 56, Ala. R. Civ. P.; Hoover, Inc. v. State Dep't of Revenue,833 So.2d at 34 (quoting Payton *Page 898 v. Monsanto, 801 So.2d 829, 832-33 (Ala. 2001));Ex parte D.M. White Constr. Co., 806 So.2d 370
(Ala. 2001) (holding that a motion for a summary judgment is an appropriate means of seeking an adjudication on the merits); and W.C.R. v. D.A.L., 963 So.2d 99 (Ala.Civ.App. 2007) (stating that a summary-judgment motion simply tests the merits of a case).
All the elements required for the application of the doctrine of collateral estoppel are present in this case. For the reasons discussed above, the first and second requirements are met. The third requirement is met because resolution of the issue in the present case and in the prior litigation — whether the Department established a sufficient justification for a tax scheme that the Alabama Supreme Court held to be "facially discriminatory" against interstate commerce — was necessary to the judgment in favor of Hoover in theHoover I litigation. The fourth requirement is met because the parties in this case are the same as the parties in the Hoover I litigation.
Accordingly, we hold that collateral estoppel bars the Department from relitigating against Hoover the issue whether a sufficient justification exists for a tax scheme that the Alabama Supreme Court has held to be "facially discriminatory" against interstate commerce, and, hence, whether a tax assessment can be assessed against Hoover for exempting Mississippi governmental entities from paying Alabama sales tax.
Because we hold that collateral estoppel bars the Department from relitigating this issue against Hoover, we need not discuss the Department's remaining assertion on appeal that a genuine issue of material fact exists as to whether the tax scheme is justified. See Ex parte Ryals,773 So.2d 1011 (Ala. 2000) (stating that an appellate court can affirm a summary judgment on any valid ground, regardless of whether the argument was presented to, considered by, or even rejected by the trial court).
 Conclusion
The trial court did not err by entering a summary judgment in favor of Hoover. Because there has been no change, since theHoover I litigation was concluded, in the controlling facts or applicable legal principles, the doctrine of collateral estoppel bars the issue presented here from being relitigated against Hoover. The judgment of the Colbert Circuit Court is hereby affirmed.
Hoover's request for damages pursuant to Rule 38, Ala. R.App. P., is denied.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] Cohen's affidavit was attached to the Department's memorandum in opposition to Hoover's motion for a summary judgment and contained the following pertinent statements:
 "IV.
 "The reasons for this alleged discriminatory treatment is that the State of Alabama, along with its political subdivisions, constitutes a class unto itself. . . . The State of Mississippi and its counties and municipalities, which supposedly are being discriminated against in this case, are not within the same class for purposes of the Alabama sales tax law. . . .
 ". . . .
 "V.
 "The State of Alabama and its political sub-divisions do not compete with any other state and thus are not similarly situated. . . .
 ". . . .
 "VII.
 "For the State of Alabama to tax itself and its governmental subdivisions would make little sense "When the only way to raise funds to pay the taxes would be to levy another tax on its taxpayers. No such action is necessary when sales are made to another state or its subdivisions.
 "VIII.
 "The sales tax exemption codified in Ala. Code § 40-23-4(a)(11) mitigates the administrative costs of an Alabama governmental entity having to pay sales tax to the State, and then having the State refund and disburse a portion of the tax right back to the Alabama entity to fund various governmental functions. This is an unnecessary step, as it is simpler to just exempt the Alabama entities from having to pay the sales tax in the first place.
 ". . . .
 "X
 "Of the states that impose a sales tax, 29, including Mississippi and the District of Columbia, have statutes similar to Ala. Code § 40-23-4(a)(11) and impose a tax on purchases made to foreign governmental entities under the same or similar facts as in the instant case."
[2] The taxpayers claimed that their real property was used as "timberland," which was subject to a special tax classification that allowed the property to be taxed at a lower rate. The Revenue Commissioner of Mobile County reviewed the real property in question and determined that it was no longer being used as "timberland" and, therefore, would be reclassified and not taxed at the lower rate for the 1991 tax year. Delaney's, 668 So.2d at 770.